339 So.2d 1280 (1976)
KINGSMAN ENTERPRISES, INC.
v.
BAKERFIELD ELECTRIC COMPANY, INC., et al.
No. 10996.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
Rehearing Denied December 20, 1976.
*1281 J. Donald Cascio, Denham Springs, for plaintiff-appellant.
J. Glenn Dupree and E. Wade Shows, Baton Rouge, for defendants-appellees.
William C. Bradley, Baker, for Baker Bank & Trust Co., appellee.
Before LANDRY, EDWARDS and COLE, JJ.
COLE, Judge.
Kingsman Enterprises, Inc. brought suit against Bakerfield Electric Company, Inc., Dynamic Constructors, Inc., and Horace B. Womack, majority shareholder of both corporations, for the alleged breach of a construction subcontract between Kingsman and Bakerfield. The trial court rendered judgment in favor of Kingsman against both Bakerfield and Dynamic, in solido. Judgment was rendered in favor of Womack, relieving him of any personal liability under the contract. Kingsman appeals only that portion of the trial court's judgment absolving Womack of personal liability. We affirm.
The issue presented by this appeal is whether Bakerfield and Dynamic were mere alter egos of Womack, thereby making Womack personally liable for the corporations' breach.
The Arnott Corporation contracted with Dynamic Constructors, Inc. to build a Days Inn Motel on property owned by Arnott. In effect, Dynamic gave the contract to Bakerfield Electric Company, Inc. Both corporations were principally owned and controlled by Horace Womack.
Bakerfield entered into a subcontract with Kingsman Enterprises, Inc. for the construction of the concrete slabs and framing for the buildings on the Days Inn project for a price of $82,000. Kingsman performed a portion of the work in accordance with the subcontract, making draws of $32,000 before the subcontract was terminated by Bakerfield. The subcontract was terminated as a result of the termination of the general contract by Arnott.
The trial court found and it is uncontested that the subcontract was terminated without just cause and in violation of the provisions of the contract between Bakerfield *1282 and Kingsman. Furthermore, the trial court found that Dynamic and Bakerfield were operated as one corporation, thereby making both corporations liable under the contract. This conclusion is not questioned; therefore, it is unnecessary to review the soundness of this determination.
The appellant contends that the trial court erred in relieving Womack, the principal owner of the defendant corporations, of personal liability. This contention is based upon the theory that Womack is liable because the corporations were his alter egos in conducting his personal business, in that he disregarded the corporate entities and made the corporations mere conduits for his own business. No allegations of fraud or deceit on the part of Womack are alleged as a basis for disregarding the corporate identity. Several cases are cited by appellant in support of this theory, e. g., Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); Bossier Millwork & Supply Company v. D. & R. Construction Company, Inc., 245 So.2d 414 (La.App. 2d Cir. 1971); Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 227 So.2d 265 (La.App. 2d Cir. 1969); Hebert v. Wiegand, 207 So.2d 882 (La.App. 4th Cir. 1968); Lindstrom v. Sauer, 166 So. 636 (La.App. Orl.Cir. 1936).
In support of the theory that the corporations in question were alter egos of Womack, appellant relies almost exclusively on the fact that Womack owned virtually all of the stock of the defendant corporations and that as president and principal shareholder he exercised control over the operations of both corporations. Appellant also points to various transfers of funds between the bank accounts of the corporations and the personal account of Womack to support his position. Our review of the applicable law as hereinafter discussed, as well as the totality of facts, convinces this court that the case does not justify piercing the corporate veil.
The general rule that corporations are distinct legal entities, separate and distinct from the individuals who compose them, is statutory in origin and well recognized in the Louisiana jurisprudence. La. C.C. art. 435; Buckeye Cotton Oil Company v. Amrhein, 168 La. 139, 121 So. 602 (1929); Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., supra; Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir. 1964). Thus, shareholders are not individually responsible for the debts due by the corporation. La.C.C. art. 437; La.R.S. 12:93(B); Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., supra.
There are, however, limited exceptions to the rule of non-liability of shareholders for the debts of a corporation whereby the court may ignore the corporate fiction and hold the individual member or members liable. In such situations courts commonly refer to the corporation as the "alter ego" of the shareholder. One such exception to the non-liability rule involves situations where fraud or deceit has been practiced on a third party by the shareholder acting through the corporation. La.R.S. 12:95; Bossier Millwork & Supply Company v. D. & R. Construction Company, Inc., supra.
Another basis for disregarding the corporate entity involves the failure to conduct a business on corporate footing, thereby disregarding the corporate entity to such an extent that the corporation ceases to be distinguishable from its shareholders. Gordon v. Baton Rouge Stores Company, 168 La. 248, 121 So. 759 (1929); Brown v. Benton Creosoting Company, 147 So.2d 89 (La. App. 2d Cir. 1962). In Louisiana, courts usually base this rule upon the often-quoted language of Keller v. Hass, supra:
"It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility. [Citations omitted]" 12 So.2d at 240
However, the broad language quoted gives little indication as to what circumstances justify piercing a corporate veil absent fraud on the part of the shareholder.[1] In *1283 fact, courts in cases involving issues of shareholder liability often fail to clearly enunciate the bases for disregarding corporateness under which they seek to hold the shareholder liable. This confusion of the grounds for disregarding corporate identity may occur because circumstances exist which support piercing the corporate veil because of both fraud and the failure to operate the corporation on a corporate footing distinct from the shareholder's personal identity. Also, the failure of a shareholder to adequately separate the corporation's identity from his own because of various factors may lead to fraud or deceit. Regardless of the basis for piercing the corporate veil, it is clear that the situation must be viewed with regard to the totality of circumstances in each case. However, it should be kept in mind that in Louisiana the concept of the separation of the corporate entity from its shareholders is the general rule and is firmly established. Because of the beneficial role of the corporate concept, this principle should be disregarded in only exceptional circumstances. Johnson v. Kinchen, supra.
In the present case appellant seeks to circumvent the rule of shareholder non-liability on the basis of various transfers of funds between the separate corporate accounts of Bakerfield and Dynamic and the personal account of Womack. Appellant elicits these transfers to support his contention that the funds were commingled, thus demonstrating that the corporate identity was ignored. However, it is clear from the record that separate banking accounts were maintained by each corporation and Womack. Also, different accountants were used by the corporations. Further, the corporate bookkeeping was kept entirely separate. It is not unusual for a sole shareholder to make loans to his corporations and to have these loans repaid. Some of the fund transfers in the instant case can be explained as loan transactions. Such circumstances do not demonstrate a commingling of corporate funds with the funds of the individual, thereby destroying the separate identities of the entities.
Appellant further relies on the fact that Womack as the majority owner of both corporations exercised complete control over the operations of the corporations, to demonstrate that the corporations were mere conduits of his personal business. Womack candidly testified that he made the decisions for Bakerfield as was his right as the controlling owner. However, Womack carefully followed the advice of his attorneys in complying with the necessary formalities of corporateness when transacting business in behalf of the corporation. When advised by his attorney, necessary board meetings were held, minutes taken and resolutions signed. As stated in Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., supra: "The fact that one owns a majority of stock in a corporation does not of itself make him liable for the corporate debts. So long as the corporate existence is maintained, immunity from liability of even a sole stockholder is the same as if there are many stockholders. [Citations omitted] Except under circumstances whereby a shareholder becomes individually liable for corporate debts through fraud, deceit, or ill practices, the shareholder is within his rights to limit his obligation by the amount of and to the extent of his subscription for capital stock. * * *" (227 So.2d at 269)
See, also, Cefalu v. N. Cefalu Company, 253 So.2d 547, 551 (La.App. 1st Cir. 1971), and Johnson v. Kinchen, supra, 160 So.2d at 299. In fact, our Business Corporation Law now recognizes that one person may form a corporation. La.R.S. 12:21.
Appellant elicits partial facts from other cases as authority for finding that the corporations were the alter egos of Womack. However, this approach is inadequate because it fails to consider the totality of circumstances as is necessary in such cases. For example, appellant cites Hebert v. Wiegand, *1284 supra, for the proposition that the corporate veil may be pierced when every act purporting to have been done by and on behalf of the corporation is entirely dictated by the shareholder. However, in Hebert v. Wiegand no corporation records were kept; there were no bylaws, resolutions or minutes; and there were no separate bank accounts. In Lindstrom v. Sauer, supra, 166 So. at 639, cited by appellant, the basis for piercing the corporate identity was the personal wrongdoing of the sole shareholder. In Bossier Millwork & Supply Company v. D. & R. Construction Company, Inc., supra, 245 So.2d at 417, the basis of finding shareholder liability was a finding of fraud and deceit on the part of the shareholders.
In the present case appellant's allegations of fraud and deception on the part of Womack were abandoned at trial. Therefore, fraud cannot be used as a basis for disregarding the corporate entity. When fraud or deceit is absent, other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one. For example, in Brown v. Benton Creosoting Company, supra, a case concerning multiple corporations having identical ownership, the court found that the corporation had ceased from its inception to operate as a separate corporate entity. However, the totality of facts strongly supported this finding:
"* * * [N]o meetings of the shareholders or directors were held after the organizational proceedings were had. No bank account was maintained by the corporation, but all receipts, whether by check or cash, were remitted to and deposited in the account of Kennedy Sawmills, Inc. Invoices for materials sold instructed the purchasers to remit directly to Kennedy Sawmills, Inc. The books of the corporation were kept in the office of Kennedy Sawmills, Inc., whose checks paid the operating expenses of the corporation, for, as stated, the corporation maintained no bank account.

* * * * * *
"The funds of the corporation and Kennedy Sawmills, Inc., were completely commingled. One endorsement stamp served the purpose of endorsing all checks for deposit, whether received in the name of John E. Kennedy, Kennedy Wood Farms, Kennedy Supply Company, Inc., Kennedy Sawmills, Inc., or Benton Creosoting Co., Inc. * * *" 147 So.2d at 93
To the contrary, the totality of facts in the instant case does not support a finding that the corporations had ceased to exist as entities, separate and distinct from their principal shareholder. Bakerfield had been an active contracting firm since the early 1960's with a recognizable identity. In fact, it is evident from the record that Kingsman was familiar with Bakerfield and never doubted that it was dealing with the corporation and not Womack personally. Further, each corporation and Womack maintained separate bank accounts and bookkeeping procedures and employed different certified public accountants. Transactions between the parties' accounts were documented so as to maintain the separate identity of the funds. Appellant has failed to substantiate his contention that Womack's personal funds and the funds of the corporations were commingled. Womack, upon the advice of his attorneys, followed the formalities necessary to maintain the corporations' identities. The totality of facts pointed out by the appellant fails to justify the contravention of the general rule of shareholder non-liability for corporation debts.
For the foregoing reasons, we affirm the trial court's decision. The costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] These factors may include but are not limited to: commingling of corporate and shareholder funds; failure to follow statutory formalities for incorporation and the transaction of corporate affairs; undercapitalization; failure to provide separate bank accounts and bookkeeping records; and failure to hold regular shareholder or director's meetings.