STOKER, Judge.
Plaintiffs, the Sanders heirs,[1] brought this petitory action against defendant, M.D. Williams, alleging ownership of a certain tract of land located in Sabine Parish, Louisiana, occupied by defendant. Plaintiffs also sought damages in the amount of $23,-342, which includes $10,000 for depreciation in value of the property due to defendant’s use of it, $15,000 for mental anguish due to defendant’s alleged trespass, and $342 for a survey done at plaintiffs’ cost to establish the boundary between the properties owned by the parties.
After trial on the merits, judgment was rendered in favor of plaintiffs declaring them to be the owners of the property in dispute based on a boundary line set by Mr. Jimmy R. Anyan, registered surveyor, and awarding them $342 for the cost of the survey. The trial court dismissed plaintiffs’ claims for the additional $25,000 in damages for lack of proof.
Defendant appeals, making the following single assignment of error:
“The trial court erred in holding that the southern boundary of the plaintiffs’ property had been accurately located by the survey conducted by Mr. Jimmy Ray An-yan.”
Although plaintiffs denominated their petition as a petitory action, resolution of the case ultimately rests not upon title alone, but upon title, prescription and the establishment of the boundary between plaintiffs’ and defendant’s properties. It is argued that insofar as title is concerned, defendant’s property lies to the south of plaintiffs’ property. In his initial answer, in addition to a general denial, defendant asserted the defense of thirty years prescription. Paragraphs ten, eleven, and twelve of defendant’s answer read as follows:
“10.
“The lands occupied by your defendant lie to the South of the Plaintiffs’ lands and the two parcels are separated by a barbed wire fence between them, and this fence has been recognized as the boundary between the said estates for a period far in excess of thirty years.
“11.
“Defendant and his authors in title have possessed up to the wire fence, aforesaid, physically occupying the lands south of same for a period of thirty years by residing thereon, operating a mill thereon, storing materials thereon, which acts are illustrative only, and nonexclusive.
“12.
“Based on the foregoing allegations, defendant pleads the prescription of thirty years under Revised Civil Code Article 796 and its predecessor, Article 852.”
Through an amended petition, the Sanders allege in the alternative that they acquired ownership of the property described in their petition by acquisitive prescription of ten and thirty years. Although the defendants claim that they acquired the property in question by acquisitive prescription by possessing up to a barbed wire fence (which they assert was the boundary fence) *174 for a period in excess of thirty years, we find this not to be so. The evidence shows that there was no visible boundary between the parties, or at least there was no boundary marking the south limits of plaintiffs’ tract. In the end, the trial court fixed the boundary according to a survey established by plaintiffs’ surveyor, Jimmy R. Anyan, as shown on a plat received in evidence as plaintiffs’ exhibit P-3.
Defendant has apparently abandoned his initial defense of thirty years acquisitive prescription based on the allegation that the fence north of his house has been the established boundary for over thirty years. Defendant as appellant in this appeal resists the claims of plaintiffs on the ground that the boundary line established by Surveyor Jimmy R. Anyan is not valid. Defendant’s complaint rests on two arguments. The first is that plaintiffs’ surveyor started his survey at a point erroneously assumed to be the southeast corner of the government land section in question. Defendant’s second argument is that the east-west line established by Mr. Anyan as the south boundary of plaintiffs’ property is not accurate. Actually, the second argument is largely based on the first, that is, the failure to start at the true point representing the southeast corner of the section.
Plaintiffs filed a formal answer to the appeal asking for damages based on frivolous appeal and seeking damages of $25,000 as originally prayed for. Defendant responded with a motion to dismiss the answer to the appeal as not having been timely filed.
For reasons set out below, we dismiss the answer to the appeal and affirm the judgment of the trial court.
FACTS
The disputed tract of land is located in the southeast quarter of the southeast quarter of Section 29, Township 10 North, Range 11 West between property owned by the Sanders heirs and Williams. The Sanders property lies north of the Williams property and is described as follows: “... all that part of the North Half of the Southeast Quarter of Southeast Quarter lying East of Texas and Pacific Railroad, all situated in Section 29, Township 10 North, Range 11 West, together with all buildings and improvements situated thereon.” The Williams lot is described primarily by reference to adjoining landowners. The full description is set out in footnote two below.[2]
Testimony at trial shows that the west half of the tract, where the Williams house is presently located, was possessed by the Sanders family from around 1937 until at least 1967. Nolan Rains testified that he worked at a sawmill on the Sanders property from 1937 until 1947 at which time the mill burned. He also testified that his father built a house around 1940 on the Sanders property with permission and later sold it to the Sanders family when the mill burned. Rains indicated that the mill and the house were just east of where the Wil *175 liams house is now. He also testified that the fence, or old fence line, north of the Williams house had not been built when the mill burned in 1947.
Mrs. Claudine Jacobs Bossier testified that she and her husband rented the house built by Rains from the Sanders family from 1953 to 1966. She also indicated that the house was just east of where the Williams house is now. However, she testified that the fence north of the Williams house was in existence when she first moved on to what she believes to be the Sanders property, and that Mr. O.L. Sanders, now deceased, had cows in the area north of the fence.
The testimony of Mr. Rains and Mrs. Bossier is consistent with that of Mr. Fred Sanders, son of Mr. O.L. Sanders and one of the plaintiffs herein. Fred Sanders testified that after Mrs. Bossier and her husband moved out of the rent house, his father sold it in 1967 and had it moved off the property. He stated that the fence north of the house was built in 1949 to form a lane in order to run cows to another section of land owned by his father.
There was also testimony that a post mill was operated on land just southeast of the Sanders rent house and that the land was rented from Williams’ ancestors-in-title. The exact location of this mill was not determined, but it appears to have been at least partially north of the Anyan survey line and may have constituted an encroachment on the Sanders’ property. Other witnesses also indicated that the fence had existed from 30 to 50 years but no definite dates were given other than those mentioned above.
Williams purchased his property and moved his house to its present location in 1977. Correspondence regarding the location of the boundary began between the Sanders heirs and Williams in late 1980, and in 1981 the Sanders heirs had a survey conducted by Jimmy Ray Anyan to establish the southern boundary of their property. It was apparently plaintiffs’ hope that Williams would accept this survey as establishing the boundary and would move his house. However, Williams took no action and this suit was eventually filed.
In summary the trial court found that the old fence line located north of the Williams house was not a boundary line. The trial court found that when he moved his house Williams had not possessed any of the property in question but that the plaintiffs and their ancestors in title had possessed the property including the area where Williams placed his house. These findings are not clearly wrong.
ANSWER TO THE APPEAL
Defendant’s motion to dismiss the answer to the appeal filed by plaintiffs should be granted on the basis of LSA-C. C.P. art. 2133 which provides in pertinent part: “In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later.” In this case the record was lodged on December 9, 1982, and the return date was December 17, 1982. Thus the last day for filing an answer to the appeal was January 3, 1983. The answer was not filed until January 5, 1983, and must be dismissed. Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1st Cir.1981).
OWNERSHIP OF THE PROPERTY
It is apparent from the facts that the defendant had been in possession of at least a portion of the disputed tract since 1977. In view of this fact, plaintiffs’ burden of proof is as provided in LSA-C.C. art. 531 which states in part:
“One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription.”
and LSA-C.C.P. art. 3653 which states in part:
“To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
*176 (1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or”
In finding that plaintiffs were the owners of the property, the trial court apparently relied on the acquisitive prescription of ten or thirty years. The trial court held that plaintiffs had established record title back to October 16, 1924, and that the southern boundary of the Sanders’ property had been fixed with certainty by virtue of the Anyan survey. We feel that these facts support a finding that the Sanders family became owners of the property by virtue of acquisitive prescription of ten years.
In order to acquire property through ten years prescription, the provisions of former LSA-C.C. art. 3479 must be met. That article provided:
“To acquire the ownership of immova-bles by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription.”
These requisites are now contained in LSA-C.C. art. 3475 as enacted by Act 187 of 1982.
Conditions one, two, and four are undoubtedly met in this case and are not at issue on this appeal. Condition three and the effect of the survey on it are at issue.
The evidence adduced at trial shows that the Sanders family possessed at least a part of the disputed property from approximately 1937 to 1967 through lessees. Former LSA-C.C. art. 3437 provided:
“It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.”
The substance of that article has been reproduced in LSA-C.C. art. 3426, as enacted by Act 187 of 1982, which provides in part:
“One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title.”
LOCATION OF SOUTH BOUNDARY
The conflict remaining for our resolution is determination of the exact limits of plaintiffs’ title. The trial judge accepted the limits established in the survey by Mr. Jimmy Anyan and we can discern no clear error in that factual determination.
Mr. Anyan testified that in a previous, larger survey of the area he had determined that the southeast corner of section 29 was located and marked by an iron rod. He followed accepted engineering practices in his attempt to verify this corner. He then located the northeast corner of the section and divided the distance between the two corners by eight in order to locate the southeast corner of the tract of land owned by the Sanders family.
Mr. Anyan measured the distance between the southeast comer of the section and the southeast corner of the Sanders property as 647.4 feet rather than the regular, i.e. standard, distance of 660 feet. It is defendant’s position that the 12.6 feet deficit is sufficient to show that the survey is incorrect because the official United States Government survey plat shows this section to be regular. We do not agree.
We believe this is a case in which the original southeast corner of the section has been lost. The original government survey notes indicate that the corner was marked by bearing trees which have been long since removed. Mr. Anyan had information that the iron rod had marked the southeast corner for over thirty years. He also found verification of this corner by a fence post one-half mile west which presumably mark *177 ed the “quarter-corner” of the section, a point halfway between the two south corners.
In a situation such as this where there is an apparent deficiency in the section, the loss should be apportioned equally. 12 Am. Jur.2d Boundaries § 62. Mr. Anyan followed this procedure in establishing the south boundary of the Sanders property and defendant’s own surveyor testified that he would have followed substantially the same procedures. The boundary is further supported by the extent of possession testified to by lessees of the Sanders’ property.
The south boundary of the Sanders’ property was established by Mr. Anyan by sound procedures and the trial court was not clearly wrong in accepting it.
CONCLUSION
For the foregoing reasons, the answer to the appeal filed by plaintiffs is dismissed and the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED.

. The plaintiffs are heirs and vendees of heirs of Oliver Ludd Sanders (O.L. Sanders) and Ozie Allen Sanders. They are listed in the petition as follows: Joe W. Sanders, Frank T. Sanders, Fred S. Sanders, Sidney O. Sanders, Ozie Lee Sanders McIntyre, Elsie Rita Sanders Crapan-zano, John Richard DeMers, Joseph William DeMers, Cynthia Dyer Morris and Jane Dyer Clanton.

. “A four acre tract in Pleasant Hill, Sabine Parish, Louisiana, more particularly described as follows: Beginning at the Southeast comer of Lot in Pleasant Hill, Louisiana, sold by J.L. Pattison to C.L. Stoddard, thence running Southeasterly 100 feet, along West line of T. & P.R.R., thence Westerly parallel 100 feet in width along South line of Stoddard Lot to rear line between said Pattison and Hamilton, thence along said line to Southwest comer of Lot sold to Stoddard; ALSO, a lot in South Half of Southeast Quarter of Southeast Quarter of Section 29, Township 10 North, Range 11 West, beginning at a point 100 feet Southeast of the Southeast comer of lot sold by Pattison to Stoddard above mentioned, thence running 100 feet Southeasterly in line with said Lot and above described along West line public road, along line of right of way of T. & P.R.R.; thence Westerly in line parallel with South line of said Stoddard Lot 100 feet wide, also rear line between the said line and Stoddard fence, thence along said line to the Northwest comer of first lot above described, said tract being bound on the North by the Sanders property; bound on the South by the Brown estate property; bound on the West by public road along the right of way of the T. & P.R.R.; and bound on the East by the 20 acre tract owned by the heirs of Pauline Armstrong Davis. (Vol. 81, P. 393) (Vol. 72, P. 489) (Vol. 84, P. 280) (Vol. 146, P. 118) (Vol. 84, P. 281), together with all improvements thereon and all rights thereto belonging.”